UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CLOUD MEDICAL DOCTOR SOFTWARE CORPORATION, a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>KROOSS MEDICAL MANAGEMENT SYSTEMS, LLC, a Mississippi Limited Liability Company; WILLIAM F. KROOSS and MARIE W. KROOSS, husband and wife,<br><br>Defendants. | Case No. 2:13-cv-01187-APG-VCF<br><br>**ORDER TRANSFERRING CASE**<br><br>(Dkt. ##7, 14) |

Defendants Krooss Medical Management Systems, Inc. ("KMMS") and William and Marie Krooss (collectively, "Defendants") filed a motion to dismiss this case for lack of personal jurisdiction and improper venue. (ECF#7).[1] In the alternative, Defendants seek a change of venue under 28 U.S.C. § 1404. For the reasons set forth below, the court grants the motion in part and transfers this case to the United States District Court for the Southern District of Mississippi.

**I.   Background**

On May 22, 2012, Plaintiff Cloud Medical Doctor Software Corp. ("Plaintiff") and the Defendants entered into an Asset Purchase Agreement. (ECF#10 at 60.) That contract was superseded on March 15, 2013 by a Permanent Transfer Asset Purchase Agreement ("PTAPA")

---

[1] On September 11, 2013, Defendants filed a Motion to Strike Exhibits in Support of Plaintiff's Response to Defendants' Motion. (ECF#14.)

1

(ECF#10 at 82). The subject of the PTAPA was Defendant KMMS' medical billing and related patient receivables collection services. KMMS' business operations were as follows:

> KMMS' business is to provide billing and collections services for medical providers—primarily physicians, nurse practitioners and their clinics. KMMS obtains documentation of medical services from its medical provider clients and the coding of those services for billing purposes. KMMS submits bills to patients, insurance companies and other third party payer for the monies due for medical services provided to its clients.
>
> …
>
> The payments for the medical bills submitted by KMMS for its clients are sent by mail or by electronic transfers from the payers to the bank accounts for KMMS' medical provider clients. None of those accounts are (sic) in Nevada and none of the payments originate, or have originated, from Nevada.[3]
>
> …
>
> After the payments are received, KMMS' personnel post and reconcile the payments and determine if any further amounts are due from the patients or third party payers. This posting and reconciliation process is conducted in the State of Mississippi and none of it has ever been done in the State of Nevada.
>
> …
>
> Under the term of the billing and collection contracts [Plaintiff] assumed, the collection company (KMMS prior to the PTAPA, and [Plaintiff] after the PTAPA) bills and collects for the medical practice clients in exchange for a fee based on a percentage of the monies collected. The monies collected go directly into an account owned by the medical provider client. To collect its fee from each client, the collection company delivers a bill from its office in Flowood, Mississippi to each client practice site in Mississippi. The client then pays the fee by check delivered to the collection company's office in Flowood.

(ECF#7 at 38-39, 42-43). Plaintiff apparently intended to open a bank account in Flowood, Mississippi, into which collected fee payments would be deposited. (*Id.* at 43.)

---

[3] Though unclear, it appears that Plaintiff purchased the rights to provide medical billing services to medical care providers located only in Mississippi. (*See* ECF#10 at 99.)

Plaintiff agreed to employ KMMS' billing and collection personnel for 180 days after the PTAPA's effective date. (*Id.* at 86 ¶2.4(x).) As of August 7, 2013, all of KMMS' billing and collection personnel were employed by Plaintiff and living in or around Jackson, Mississippi. (*Id.* at 40-41). Defendants contend that, pursuant to the PTAPA, Plaintiff acquired all of the "related billing and collection assets [located] at 2001 Airport Road, Flowood, Mississippi used to perform the billing and collection work under those contracts," and shared that office with KMMS until August 2, 2013, when Plaintiff moved its offices to a nearby location. (*Id.* at 40-41.)

On July 5, 2013, filed its Complaint alleging breach of contract, fraud, conversion, and breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that Defendants converted "personal property transferred to Plaintiff…in the [PTAPA] such as office equipment, computers, printers, and customer lists…," and that the amount converted includes more than $125,000 in revenue from the billing contracts. (ECF#1 at 3.) Soon after Plaintiff filed his lawsuit, Defendants filed a lawsuit in Mississippi state court based on the same facts at issue here. That action was removed to the United States District Court for the Southern District of Mississippi, where it is pending. Defendants seek to have this case dismissed or transferred to the Southern District of Mississippi so the two lawsuits can be addressed together.

## II. Discussion

Defendants seek dismissal of this case on two grounds: (A) this court lacks personal jurisdiction, and (B) this court is not the proper venue. Each argument is discussed in turn.

### A. This Court has personal jurisdiction over Defendants

Plaintiff concedes that this court lacks general jurisdiction over Defendants. (ECF#10 at 10 (stating "[Plaintiff] is not necessarily claiming that this Court has general jurisdiction over [Defendants] but, rather, that this Court has specific jurisdiction….").) Thus, the Court limits its analysis to the issue of specific personal jurisdiction.

3

"A plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute, and (2) that the exercise of jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006). Nevada's long-arm statute has been construed to extend to the outer reaches of due process. *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 698, (1993) (citing *Certain-Teed Prods. v. District Court*, 87 Nev. 18, 23 (1971)). Thus, the proper analysis of personal jurisdiction under Nevada's long-arm statute and the Constitution collapse into one: whether the exercise of jurisdiction over Defendants comports with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

Constitutional due process is satisfied when a non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (quotations and citation omitted). A court exercises specific jurisdiction over a defendant where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum. *Hanson v. Denckla*, 357 U.S. 235, 251 (1958). "Whether dealing with specific or general jurisdiction, the touchstone remains 'purposeful availment.'" *Glencore Grain*, 284 F.3d at 1123. By requiring that "contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," the Constitution ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the

plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995). The plaintiff bears the burden of satisfying the first two prongs of the "minimum contacts" test. *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Here, the first and second prongs are met because when Defendants executed the PTAPA, they agreed to be bound by its provisions, including the following choice of law provision:

> Governing Law. This Agreement shall be deemed to have been executed and delivered within the State of Nevada, as if entered into by residents thereof and to be performed entirely therein, and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the Laws of the State of Nevada, without regard to any conflict of Laws principles that would apply a different state's Laws.

(ECF#10 at 97, ¶8.7.) Having entered into an agreement deemed executed and delivered within the State of Nevada, the Defendants' actions satisfy the first prong. Moreover, the Defendants came to Nevada once after execution of the PTAPA, to meet with Plaintiff. (ECF#13-2 at ¶¶5, 6; ECF#10 at 24, ¶9.) The second prong is met because Plaintiff's claims for breach of contract and breach of the implied covenant arise from the PTAPA, although Defendants contend that the actions allegedly giving rise to those claims occurred in Mississippi.

With regard to the third prong, the Court has considered the following seven factors to determine whether the exercise of jurisdiction would be reasonable: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution

of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013). The Defendants have not made a compelling case that this court's exercise of personal jurisdiction over them would be unreasonable. Therefore, the court has specific personal jurisdiction over Defendants.

### B. Transfer of venue to the USDC in the Southern District of Mississippi is proper.

Defendants argue that this case should be dismissed because this court is not a proper forum pursuant to 28 U.S.C. § 1391(b). (ECF#7 at 11.) Alternatively, Defendants argue that this case should be transferred to the Southern District of Mississippi under 28 U.S.C. § 1404(a). For the reasons discussed below, the Court declines to dismiss the case, but transfers venue.

#### (1) Dismissal of the case for improper venue is unwarranted.

A civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Here, most of the actions that give rise to Plaintiff's Complaint – alleged conversion of funds and breaches of contract – appear to have occurred in Mississippi. However, the PTAPA signed by Defendants states that it "shall be deemed to have been executed and delivered within the State of Nevada, as if entered into by residents thereof and to be performed entirely therein. ..." (ECF#10 at 97, ¶8.7.) Plaintiff's Complaint arises from the PTAPA. This clause is sufficient to establish that this court is not an improper venue for this lawsuit. Therefore, the court declines to dismiss the case for improper venue.

#### (2) *The case should be transferred to the Southern District of Mississippi.*

A district court may transfer a civil action to any other district in which the action might have been brought if such transfer is for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Here, the action could have been brought in the Southern

6

District of Mississippi because all the Defendants reside there. 28 U.S.C. § 1391(b)(1). Thus, the question is whether transfer of this case to that district would serve the convenience of parties and witnesses and the interests of justice.

Under § 1404(a), the district court should "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case.18 For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99.

(a) *Factor 1: The location where the relevant agreements were negotiated and executed.*

As discussed above, the PTAPA deems it to have been executed and delivered within the State of Nevada. (ECF#10 at 97, ¶8.7.) However, the actual negotiations of the PTAPA were conducted in-person in Mississippi and via phone calls and emails between the parties in their respective states (i.e., Defendants in Mississippi and Plaintiff in Arizona and/or Nevada). Mrs. Krooss asserts that in 2011, Plaintiff's corporate officers Michael De La Garza and Robert Leblanc contacted Defendants in Mississippi respecting the transactions that ultimately were memorialized in the PTAPA. (ECF#7 at 39.) Dr. Krooss asserts that following the "initial conversation, LeBlanc and De La Garza began visiting my wife and me in Mississippi and contacting us by phone regarding [the proposals that led to the PTAPA]." (*Id.* at 21, ¶5.) Plaintiff does not counter these assertions. This factor is neutral or favors Mississippi.

(b) *Factor 2: The state that is most familiar with the governing law.*

The PTAPA provides that it will be governed by Nevada law. Thus, Plaintiff's two claims arising under the PTAPA (breach of contract and breach of the implied covenant) favor having the case heard in Nevada. However, Plaintiff also asserts two tort claims for fraud and conversion, based upon acts that Defendants allegedly committed in Mississippi. The parties dispute which state's law applies to such tort claims: Mississippi or Nevada. Without resolving this issue, this factor is either neutral or weighs slightly in favor of Nevada.

(c) *Factors 3, 4, and 5: the plaintiff's choice of forum, the respective parties' contacts with the forum, and the contacts relating to the plaintiff's cause of action in the chosen forum.*

Clearly Plaintiff prefers to litigate in Nevada. Plaintiff has maintained an office in Nevada since 2010, and later changed its principal place of business from Arizona to Nevada (although it is unclear when), but failed to register as a foreign corporation licensed to business in Nevada until August 2013. (ECF#10 at 4.) Both the PTAPA (ECF#10 at 97) and its earlier iteration (ECF#10 at 60) provide that as of their respective effective dates, Plaintiff was a Texas Corporation. This cuts against Plaintiff's argument that it had significant contacts with Nevada, in general or in connection with the claims asserted in this lawsuit.

Defendants have no contacts with the state of Nevada, except for a few infrequent visits. In connection with the subject dispute, Defendants came to Nevada only once, and after execution of the PTAPA. (ECF#13-2 at ¶¶5, 6; ECF#10 at 24, ¶9.) Moreover, the Defendants' alleged actions which give rise to Plaintiff's Complaint (i.e., converting funds, breaching the contract) occurred in Mississippi. These factors favor Mississippi over Nevada.

8

(d) *Factors 6, 7, and 8: the differences in the costs of litigation in the two forums, the availability of compulsory process to compel attendance of unwilling non-party witnesses, and the ease of access to sources of proof.*

Plaintiff admits that most of its witnesses are located in states other than Nevada, and one is located in India. The vast majority of Defendants' witnesses live in Mississippi. Moreover, the bulk of the relevant documents related to Plaintiff's fraud and conversion claims (e.g., bank records, business records, customer contracts) are located in Mississippi. Thus, litigation would be less expensive in Mississippi, access to sources of proof is easier in Mississippi, and compulsory process to compel more of these witnesses' attendance at trial is available in Mississippi than Nevada. These factors weigh strongly in favor of transferring venue to Mississippi.

Based on the foregoing factors, even if this court is a proper venue for this dispute, the interests of justice and convenience of parties and witnesses dictate that this case should be transferred to the Southern District of Mississippi. Accordingly,

**IT IS HEREBY ORDERED** that this case is transferred to the United States District Court for the Southern District of Mississippi.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Exhibits [Dkt. #14] is **DENIED.**

Dated: December 16, 2013.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

9